**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**TROY BATISTE**                                    **CIVIL ACTION**

**versus**                                              **NO. 13-3856**

**BURL CAIN, WARDEN**                        **SECTION: "G" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Troy Batiste, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On August 1, 2008, he was convicted of second degree battery and

aggravated criminal damage to property under Louisiana law.[1]  On November 3, 2008, he was sentenced on each conviction to a concurrent term of five years imprisonment.[2]  On September 16, 2010, he was found to be a third offender and resentenced as such on the second degree battery conviction to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[3]  On June 10, 2011, the Louisiana First Circuit Court of Appeal affirmed his convictions, habitual offender adjudication, and sentences.[4]  On January 13, 2012, the Louisiana Supreme Court denied his related writ application.[5]

On March 26, 2012, petitioner filed an application for post-conviction relief with the state district court.[6]  That application was denied on May 7, 2012.[7]  His related writ applications

---

[1] State Rec., Vol. III of VI, transcript of August 1, 2008, p. 79; State Rec., Vol. I of VI, minute entry dated August 1, 2008; State Rec., Vol. I of VI, jury verdict form.

[2] State Rec., Vol. III of VI, transcript of November 3, 2008; State Rec., Vol. I of VI, minute entry dated November 3, 2008.

[3] State Rec., Vol. III of VI, transcript of September 16, 2010; State Rec., Vol. I of VI, minute entry dated September 16, 2010; State Rec., Vol. II of VI, Reasons for Judgment dated September 24, 2010.

[4] State v. Batiste, No. 2010 KA 2237, 2011 WL 3423904 (La. App. 1st Cir. June 10, 2011); State Rec., Vol. IV of VI.

[5] State v. Batiste, 77 So.3d 951 (La. 2012) (No. 2011-KO-1527); State Rec., Vol. IV of VI.

[6] State Rec., Vol. IV of VI.

[7] State Rec., Vol. IV of VI, Order dated May 7, 2012.

were then likewise denied by the Louisiana First Circuit Court of Appeal on August 13, 2012,[8] and

October 29, 2012,[9] and by the Louisiana Supreme Court on April 19, 2013.[10]

On May 9, 2013, petitioner filed the instant federal application seeking *habeas corpus*

relief.[11]  The state concedes that the application is timely and that petitioner exhausted his remedies

in the state courts.[12]

### I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of

fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal

habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials'

and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v.

Cone, 535 U.S. 685, 693 (2002).

---

[8] State v. Batiste, No. 2012 KW 0906 (La. App. 1st Cir. Aug. 13, 2012); State Rec., Vol. IV of VI.

[9] State v. Batiste, No. 2012 KW 1512 (La. App. 1st Cir. Oct. 29, 2012); State Rec., Vol. IV of VI.

[10] State *ex rel.* Batiste v. State, 114 So.3d 1155 (La. 2013) (No. 2012-KH-2525); State Rec., Vol. IV of VI.

[11] Rec. Doc. 4.

[12] Rec. Doc. 12, pp. 3-4.

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.  Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.  AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.* *As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law

and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S.

Ct. 1697, 1701 (2014).

## II.  Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

> The victim, Scott Roy Sewell, testified at trial.  On July 6, 2001, at approximately 8:00 p.m. or 9:00 p.m., he was at the Chevron gas station on Highway 190 in Lacombe.  According to the victim, he first noticed the defendant when the defendant almost sideswiped his vehicle while it was parked at the pump.  The defendant said something about "cutting him off and stuff."  When asked if he said anything to the defendant, the victim replied, "I guess I did.  Probably, whatever."  The victim claimed the defendant argued with him while the victim fueled his car and while the defendant's girlfriend told the defendant to get in the car and leave.  Thereafter, the defendant got into his car and left.

> When the victim exited the building after paying for the gas, however, the defendant was standing outside the building.  According to the victim, the defendant continued to argue with him while the victim walked to his car.  The victim got into his car, "revved it up a little," and "peal[ed][sic] out a little."  He denied striking, or trying to strike, the defendant with the car.  According to the victim, the defendant ran up to the vehicle, smashed its side window with his fist, and tried to climb into the moving vehicle.  The victim accidentally put the vehicle in reverse, then put it in park, and walked around to the back of the vehicle.  He conceded his vehicle's tires might have run over the defendant's feet while he was trying to put the vehicle in park.  The victim saw a hand coming at him, and saw that the defendant was "gushing out blood."  The victim blocked some of the defendant's punches as he backed away from the defendant.  The victim denied that he tried to hit the defendant.  The victim then tripped and fell down, and the defendant jumped on him and punched him in the face until a clerk from the building jumped on the defendant.  The defendant then left the gas station.  The victim was unable to leave the gas station because he could "barely see."

> The victim suffered a collapsed cheekbone, a gash on his face, which required five stitches, and a fractured jaw, which prevented him from chewing.  At the time of trial, as a result of the injuries he received in the incident, he was suffering headaches, problems with the nerves in his face, and problems with his bite.  He denied he did anything to provoke the defendant to attack him.  He conceded that

following the incident, in an unrelated incident involving his wife, he pled guilty to aggravated battery and simple battery.

On cross-examination, the defense asked the victim if, when the defendant was complaining about the victim's driving, the defendant had stated that the victim had "almost gotten him killed," and the victim had told the defendant not to worry about it because the victim had insurance. The victim answered "[p]robably." When asked if he "[shot] the bird" at the defendant, the victim answered, "[c]ould have. Don't really remember anymore." The victim denied he was armed with a knife or a screwdriver during the incident, and denied calling the defendant a n----r.

Amber Larkin Tabiner also testified at trial. On the evening of the incident, she was working as a gas station attendant for L & M Chevron in Lacombe. She remembered selling the victim some gasoline and indicated he was calm, not arrogant, and not angry. According to Tabiner, "somebody" punched in the window of the victim's car as he was driving out of the parking lot. When the victim exited his car, the attacker grabbed him by his ponytail and started beating him in the face. Tabiner indicated the defendant started the physical violence. She did not see the victim strike the defendant or try to hit him with the victim's vehicle. She also did not hear anyone squealing or spinning tires. She did, however, see the police taking measurements of skid marks after the incident.

Felicia Jarvis also testified at trial. The defendant was her estranged husband. She claimed, on the evening of the incident, she and the defendant were run off the road by the victim. She claimed the defendant pulled alongside the victim's car and complained, and the victim stated he had insurance and started digging in the glove box. She claimed the defendant pulled up to the building at the gas station to allow her to get some cigarettes. She claimed the victim exited the building, got into his car, and hit the defendant with the vehicle, but she did not know if he intentionally struck the defendant. She claimed the victim hit his brakes so hard, they squealed and his vehicle skidded. She claimed the defendant did not punch the victim's window, but the victim exited his car and rushed at the defendant with "something in his hands." She claimed the defendant did not try "to run from it," but left to get treatment from his brother, who was a nurse. She conceded her statement given to the police on the night of the incident did not allege that she and the defendant had been run off the road by the victim, or that the victim had anything in his hands.

The defendant also testified at trial. He stated that on the evening of the incident, he was driving his wife to the store to buy beer and rent movies, when he was forced off the road by a white Ford Mustang that crossed into his lane of travel. He claimed he was forced off the road, through some bushes, and into a roadside shrimp stand. The Mustang pulled into a nearby Chevron gas station. The defendant indicated he pulled alongside the Mustang and told the driver, "Man, you almost killed me and my wife." According to the defendant, the victim replied, "Killed you and your wife? I got insurance, I got insurance. Did I hit you? Did I hit you? Did I hit you?" The defendant claimed he then returned to his vehicle and proceeded to the video store, but it was closed. As he was coming back, he passed in front of the Chevron. He claimed a friend of his, Reginald Dickson, pulled into the Chevron, so he pulled in behind him to talk to him. The defendant said the victim came out of the building at the Chevron station, walked by him without saying anything, and got into his car. He claimed the victim revved up his motor, began spinning his tires, and there was "nothing but smoke, smoke, burning tires, burning tires." The defendant indicated he tried to walk around the victim's vehicle, but the victim drove at him and struck him with the vehicle, injuring his feet and throwing him inside the vehicle through the passenger-side window. The defendant claimed he told the victim, "Boy, you in trouble," and the victim replied, "It's on, it's on, it's on." According to the defendant, the victim then jumped out of the car and attacked him with a screwdriver. He claimed he punched the victim because the victim was "sticking" him with the screwdriver.[13]

### III. Petitioner's Claims

### A. Sentence

Petitioner asserts three claims related to his enhanced sentence as a habitual offender.

First, he argues that the habitual offender proceedings should have been instituted by an indictment rather than a bill of information. Second, he argues that the habitual offender charge should have

---

[13] State v. Batiste, No. 2010 KA 2237, 2011 WL 3423904, at *1-3 (La. App. 1st Cir. June 10, 2011); State Rec., Vol. IV of VI.

been submitted to a jury for determination.  Third, he argues that the jury should have been made aware that he potentially faced a life sentence as a habitual offender if convicted on the underlying charge of second degree battery.  The state argues that these claims are procedurally barred and, alternatively, have no merit.  In that the latter argument is clearly correct, the undersigned recommends that the claims simply be denied on that basis.[14]

The first of petitioner's contentions fails to present a cognizable *habeas* claim. Federal *habeas* relief may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), and it is clear that "there is no federal constitutional right to an indictment before trial in a state criminal action," Hamilton v. McCotter, 772 F.2d 171, 184 (1985).  Moreover, as another division of this Court has concisely explained, neither federal nor state law requires an indictment to institute habitual offender proceedings in the Louisiana state courts:

> With regard to [petitioner]'s claim that his multiple bill should have been issued by a grand jury, his claim is without basis in law. First, he has not identified any Supreme Court precedent or other federal authority to support his claim.  Further, this Court's research has located no such legal requirement.  Instead, the law indicates that [petitioner] has no protected right to a grand jury in connection with his multiple offender adjudication for the following reasons.
>
> Under Louisiana law, the "prosecution" of an offense punishable by death or life imprisonment "shall be instituted by indictment by a grand jury."  La. Code Crim. P. art. 382.  However, a multiple offender or enhancement proceeding is not the prosecution of an offense and does not charge the defendant with a new crime.

---

[14] A federal *habeas* court need not determine whether a claim is in fact procedurally barred when, as here, the claim clearly fails on the merits.  See Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n.5 (E.D. La. July 30, 2008).

> State v. Vincent, 56 So.3d 408, 414-15 (La.App. 4th Cir. 2011). "The
> enhancement of the penalty for habitual offenders convicted of a new
> felony only addresses itself to the sentencing powers of the trial judge
> after conviction and has no functional relationship to the innocence
> or guilt of the instant crime." State v. Walker, 416 So.2d 534, 536
> (La. 1982).
>
> Because such proceedings are not determinative of guilt or
> innocence under Louisiana law, they do not offer the accused the full
> range of due process and other constitutional rights normally
> attendant to such guilt adjudications. Buckley v. Butler, 825 F.2d
> 895, 902-03 (5th Cir. 1987); State v. Dorthey, 623 So.2d 1276 (La.
> 1993) (Because the multiple offender hearing is not a trial, legal
> principles such as res judicata, double jeopardy, the right to a jury
> trial do not apply). As a result, the United States Supreme Court has
> recognized that "'[t]he Due Process Clause does not, ... require a State
> to adopt one procedure over another on the basis that it may produce
> results more favorable to the accused.'" Parke v. Raley, 506 U.S. 20,
> 32 (1992) (quoting Medina v. California, 505 U.S. 437, 451 (1992)).
>
> Louisiana law does not provide for a grand jury indictment
> under its procedures for a multiple offender adjudications. State v.
> Vincent, 56 So.3d 414-15. For these reasons, there is nothing here to
> give rise to a constitutional violation reviewable by this federal
> habeas court. See Scott v. Cain, No. 07-6430, 2008 WL 2185381, at
> *10 (E.D. La. Apr. 21, 2008) (Wilkinson, M.J.) (report and
> recommendation), adopted by, No. 07-6430, 2008 WL 2223282, at
> *1 (E.D. La. May 21, 2008) (Engelhardt, J.), affirmed, 364 Fed.
> Appx. 850 (5th Cir.), cert. denied, 130 S.Ct. 3519 (2010).

Schmolke v. Cain, Civ. Action No. 10-1534, 2011 WL 2413476, at *8 (E.D. La. May 25, 2011),

adopted, 2011 WL 2312481 (E.D. La. June 10, 2011). Therefore, this first claim must be rejected.

In Schmolke, the Court also concisely explained why petitioner's second claim, i.e.

that the habitual offender charge should have been submitted to a jury for determination, has no

merit:

> [Petitioner] also argues that he was entitled to a jury trial on
> his multiple offender adjudication. This too is without legal basis.
> The United States Supreme Court has held that the Constitution does
> not require that proof of the fact of a prior conviction be brought to

a jury.  Apprendi v. New Jersey, 530 U.S. 466, 590 (2000).  In Apprendi, the Supreme Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi, 530 U.S. at 490 (emphasis added) [sic].  The Supreme Court reiterated this rule in its subsequent rulings in Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220 (2005), recognizing exceptions to the Apprendi rule for prior convictions and habitual offender adjudications.  Accord Williams v. Terrell, 2006 WL 1751059 (W.D. La. May 2, 2006) (discussing holdings and non-retroactivity of the cases).

Even prior to Apprendi, the United States Fifth Circuit Court of Appeals held that the Sixth Amendment does not require a trial by jury for multiple offender proceedings.  Buckley, 825 F.2d at 904 n.3. Instead, bestowing such a right to a defendant is left to state law, and in Louisiana there is no such provision.  Id. (citing La. Rev. Stat. Ann. § 15:529.1(D)); see La. Rev. Stat. Ann. § 15:529.1(D)(2) ("Following a contradictory hearing, the court shall find" that the defendant is a second, third, or fourth offender) (emphasis added); La. Rev. Stat. Ann. § 15:529.1(D)(3) ("When the judge finds" that defendant has been convicted of a prior felony) (emphasis added). Louisiana law does not provide for a jury trial in connection with [petitioner]'s multiple offender adjudication.  State v. Vincent, 56 So.3d at 415.  He therefore has failed to present a violation of his due process rights.

Schmolke, 2011 WL 2413476, at *9.  Accordingly, this second claim likewise has no merit and must be rejected.

As to petitioner's third contention, i.e. that the jury should have been made aware that he potentially faced a life sentence as a habitual offender if convicted, that claim also fails.  As already noted, a petitioner is entitled to federal habeas relief only if he shows that he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Again, petitioner has identified no provision of federal law stating that a defendant is entitled to an instruction informing the jury that he is subject to an enhanced penalty as a habitual offender if

convicted of the underlying criminal charge, and this Court is aware of no such provision.[15]

Accordingly, petitioner has failed to establish that he is entitled to relief with respect to this claim

and it must therefore be rejected.

### B.  Sufficiency of the Evidence

Petitioner next claims that there was insufficient evidence to support his convictions.

On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> [T]he defendant argues the evidence was insufficient to support the second degree battery conviction because the State failed to prove he did not act in self-defense.  The defendant concedes that he used force upon the victim and that the victim suffered serious bodily injury.  However, he disputes he had the specific intent to cause serious bodily injury, and claims he was only defending himself.  He also claims the evidence was insufficient to support the aggravated criminal damage to property conviction, arguing, even if he intentionally broke the window of the car, it was not foreseeable that human life could be endangered from that act.
>
> The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt.  In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove, in order to convict," every reasonable hypothesis of innocence is excluded.  State v. Wright, 98-0601, p. 2 (La.App. 1 Cir.

---

[15]  The Court notes in passing that such an instruction likewise is not required even under state law.  See State v. Dominick, 658 So.2d 1, 3 (La. App. 4th Cir. 1995) ("Although the multiple bill carries a mandatory minimum, the filing of the multiple bill is optional with the State.  In any event, the allegations of the multiple bill must be proved before the mandatory minimum sentence becomes an issue and under [State v.] Dorthey, [623 So.2d 1276 (La. 1993),] the trial court has the discretion in not applying the mandatory minimum sentence if the facts warrant.  Accordingly, any instruction or argument to the jury relative to the minimum sentence that a defendant could receive as a quadruple offender is within the discretion of the trial judge.").

2/19/99), 730 So.2d 485, 486, <u>writs denied</u>, 99-0802 (La. 10/29/99), 748 So.2d 1157, 2000-0895 (La. 11/17/00), 773 So.2d 732 (quoting La. R.S. 15:438).

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution.  When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.  <u>Wright</u>, 98-0601 at 3, 730 So.2d at 487.

As is pertinent here, battery is the intentional use of force or violence upon the person of another.  La. R.S. 14:33.  Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.  Serious bodily injury means bodily injury that involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.  La. R.S. 14:34.1 (prior to amendment by 2009 La. Acts No. 264, § 1).  Second degree battery is a specific-intent offense.  Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act.  La. R.S. 14:10(1).  Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances.  <u>State v. Druilhet</u>, 97-1717, p. 3 (La.App. 1 Cir. 6/29/98), 716 So.2d 422, 423.

Aggravated criminal damage to property is "the intentional damaging of any ... movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion." La. R.S. 14:55.

Prior to amendment by 2006 La. Acts No. 141, § 1, La. R.S. 14:19, in pertinent part, provided:

> The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person ... provided that the force or violence used must be reasonable and apparently necessary to prevent such

offense, and that this article shall not apply where the force or violence results in a homicide.

However, La. R.S. 14:21 provides:

A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.

In a non-homicide situation, a claim of self-defense requires a dual inquiry: first, an objective inquiry into whether the force used was reasonable under the circumstances, and, second, a subjective inquiry into whether the force used was apparently necessary. In a homicide case, the State must prove, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. However, Louisiana law is unclear as to who has the burden of proving self-defense in a non-homicide case. In previous cases dealing with this issue, this court has analyzed the evidence under both standards of review, that is, whether the defendant proved self-defense by a preponderance of the evidence or whether the State proved beyond a reasonable doubt that the defendant did not act in self-defense. Similarly, we need not decide in this case who has the burden of proving (or disproving) self-defense, because under either standard the evidence sufficiently established that defendant did not act in self-defense. State v. Taylor, 97-2261, p. 4 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 931.

Any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of second degree battery and aggravated criminal damage to property, the defendant's identity as the perpetrator of those offenses, and that the defendant's attack on the victim was not justified. The verdict rendered against the defendant indicates the jury rejected the defense theory that the victim was the aggressor in this case. When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v.

Captville, 448 So.2d 676, 680 (La. 1984). No such hypothesis exists in the instant case. Additionally, the verdict rendered against the defendant indicates the jury accepted the testimony offered against him and rejected the testimony offered in his favor. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Lofton, 96-1429, p. 5 (La.App. 1 Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La. 10/17/97), 701 So.2d 1331. Further, in reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. See State v. Ordodi, 2006-0207, p. 14 (La. 11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Calloway, 2007-2306, pp. 1-2 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).

Additionally, any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could find that the evidence presented by the State established that the defendant was the aggressor in the conflict, and thus, was not entitled to claim self-defense. Moreover, even if it could be found that the defendant was not the aggressor, any rational trier of fact could find, beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant did not act in self-defense. Testimony at trial indicated the defendant ran up to the victim's vehicle as he was trying to leave the gas station, smashed one of its windows with his fist, tried to climb into the moving vehicle, attacked the victim after he exited the vehicle, and repeatedly punched him in the face after he fell down.

This assignment of error is without merit.[16]

---

[16] State v. Batiste, No. 2010 KA 2237, 2011 WL 3423904, at *3-6 (La. App. 1st Cir. June 10, 2011); State Rec., Vol. IV of VI.

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[17]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, it is clear that he has not made that showing in the instant case.

Claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.  Importantly, "[t]he Jackson inquiry 'does *not* focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added).  Therefore, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Cavazos v. Smith, 132 S. Ct. 2, 4 (2011).

---

[17]  State v. Batiste, 77 So.3d 951 (La. 2012) (No. 2011-KO-1527); State Rec., Vol. IV of VI.

Moreover, as the United States Fifth Circuit Court of Appeals has observed:  "[A] state prisoner's burden is especially heavy on habeas review of the sufficiency of the evidence.  The jury's finding of facts will be overturned only when necessary to preserve the fundamental protection of due process of law."  Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008) (quotation marks omitted). Further, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).[18]

In the instant case, the elements of the crimes were established through the victim's testimony, as well as other evidence.  Generally, a victim's testimony and positive identification of a defendant is alone sufficient evidence to support a conviction.  Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Holderfield v. Jones, 903 F. Supp. 1011, 1017 (E.D. La. 1995).  Moreover, as

---

[18]   It must additionally be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.  Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S. Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

the state court noted, the issue here turns on credibility and, as it further noted, the jury obviously found the state's witnesses more credible than those called by the defense. Where a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal *habeas* court generally will not grant relief. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under these doubly-deferential standards of review which must be applied by this federal *habeas* court, relief is not warranted.

C. Right to Subpoena Witnesses/Right to Confrontation/Ineffective Assistance of Counsel

Lastly, petitioner asserts three interrelated claims that he was denied his rights to subpoena witnesses, confrontation, and the effective assistance of counsel. In the state post-conviction proceedings, the district court (which characterized all of these claims as being subsumed

- 19 -

within the ineffective assistance claim) held that petitioner failed to meet his burden of proof and denied relief.[19] His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[20] and by the Louisiana Supreme Court.[21]

Specifically, petitioner claims that, prior to trial, he notified his defense team that he wanted the following witnesses subpoenaed for trial:  Deputy Michael O'Neal, Reginald Dickson, Sharon Laurant, Dr. Tassin, Felisha Jarvis, and Lester Casnea.  Of those potential witnesses, only Jarvis testified at trial.  At the beginning of trial, petitioner expressed his displeasure concerning the absence of his witnesses:

> BY MR. BATISTE:
> Excuse me.  Can I ask you a question?
>
> BY THE COURT:
> Yes.
>
> BY MR. BATISTE:
> Over the years, coming to this courtroom, Mr. McGuckin [defense counsel] ain't told me nothing.  I wish I would be represented by somebody else, not the public defender.
>
> BY THE COURT:
> Sir, if you were unhappy with your representation, you should have said something way before now.  Last time this case came up on the docket, I told everybody, and you were present, I told the state and I told the public defender's office that there would not be

---

[19]  State Rec., Vol. IV of VI, Order dated May 7, 2012.

[20]  State v. Batiste, No. 2012 KW 0906 (La. App. 1st Cir. Aug. 13, 2012); State v. Batiste, No. 2012 KW 1512 (La. App. 1st Cir. Oct. 29, 2012); State Rec., Vol. IV of VI.

[21]  State ex rel. Batiste v. State, 114 So.3d 1155 (La. 2013) (No. 2012-KH-2525); State Rec., Vol. IV of VI.

anymore continuances in this case.  We have witnesses here from out
of town.  We are ready to proceed.

BY MR. BATISTE:
        I understand, Your Honor.  But all my witnesses are not here.

BY THE COURT:
        Well, that's your problem.

BY MR. BATISTE:
        I asked for them.  I mean, Reginald Dickson (phonetic) was
there on the scene of the crime and the State said I can't bring him in.

BY THE COURT:
        We are proceeding to trial.  That should have been brought up
before today.
        All right.  Would you please bring in the jurors.

BY MR. BATHOLOMEW [prosecutor]:
        Just to keep the record clarified:  I actually learned, the first
time I heard the name Reginald Dickson or saw that name was
yesterday when I noticed that Mr. McGuckin had been attempting to
obtain Mr. Reginald Dickson's presence here in court through the
court process.  I would also point out that there are certain witnesses
that are not available to the State today.  Both sides are at an equal
disadvantage.

BY THE COURT:
        Sure.  Because this case has been going on for so long.
        All right.  Please get the jurors for me.[22]

---

[22]  State Rec., Vol. II of VI, transcript of July 30, 2008, pp. 4-6.  As the prosecutor noted, and
contrary to petitioner's suggestion in this proceeding, the record reflects that defense counsel did
make an attempt to secure Dickson's presence for trial.  In fact, defense counsel filed a "Motion and
Order for Writ of Habeas Corpus ad Testificandum" for that purpose, and the trial court *granted* that
motion.  State Rec., Vol. I of VI.  Why Dickson did not in fact appear for trial is not apparent from
the record.

Then, at the beginning of the third day of trial, petitioner again complained:

BY THE WITNESS [petitioner]:
 I'm wondering why I'm being denied questioning the officer that arrested me.

BY THE COURT:
 The officer that arrested you –

BY MR. McGUCKIN:
 Deputy O'Neal (phonetic).

BY THE COURT:
 – one person has moved.  Would that be O'Neal?

BY MR. BARTHOLOMEW:
 Your Honor, it's my understanding that Deputy O'Neal is now a member of the Federal Border Patrol, stationed in Arizona.  He was not available to us, and we would have liked to have presented him in the State's direct case, but he was unavailable.  We could not obtain his presence.  Nobody asked us to obtain his presence on anyone else's behalf, so we proceeded without him.

BY THE WITNESS:
 Excuse me, your Honor.  That was my main, that was my main witness.

BY THE COURT:
 Well, the problem is that he's not subject to a subpoena by this court.

BY THE WITNESS:
 He came back to my house and saw my two sisters and my wife and said that he made a big mistake and was going to straighten this up.

BY THE COURT:
 I mean, it's certainly an argument Mr. McGuckin can make, that the witness was not available.
 I have no subpoena power over this witness.  I can't force him to come.  Now this case has been on the docket, I don't know how many years, and it's been continued at the request of the defense on

most cases – in fact, probably 80 percent of the cases and now the witness has moved, so there's nothing I can do about it.

BY THE WITNESS:
    So in other words, my rights are – I can't have here, is that what you're saying?

BY THE COURT:
    I have no subpoena power over somebody who lives out of state.

BY THE WITNESS:
    I want to put on the record saying that you denying –

BY THE COURT:
    Well, it's on the record.

BY MR. McGUCKIN:
    Also, he had –

BY THE WITNESS:
    Reginald Dickson.

BY MR. McGUCKIN:
    Right.  Reginald Dickson, it's my understanding is in the federal penitentiary, your Honor, and I can't get him here.

BY THE COURT:
    I can't either.  I have no subpoena power over somebody in the federal penitentiary.

BY MR. McGUCKIN:
    No, we can't even get defendants here who want to plead.

BY THE WITNESS:
    The officer that put the charge on me, I can't question him?

BY THE COURT:
    I can't get him here, sir.  I have no authority.  I mean, that's part of the problem in delaying cases is that witnesses move, witnesses die, et cetera.  So, I mean, we have to have the case as it is.

BY THE WITNESS:
  I understand.  But I'm saying that since I've been here, coming here all these years and it ain't never come out of my mouth when I asked for a continuance, I ain't never asked for a continuance.  I ain't never asked for a continuance.

THE COURT:
  Your attorney has requested continuances.  That's enough said on this issue.[23]

To the extent that petitioner is claiming that the trial court denied his rights by failing to issue subpoenas to compel the attendance of his witnesses, it must first be noted that petitioner raised this issue at trial only with respect to Deputy Michael O'Neal and Reginald Dickson. Therefore, he certainly has no grounds to complain that the trial court erred in denying his request to issue subpoenas to Sharon Laurant, Dr. Tassin, and Lester Casnea, in that no request for such subpoenas was ever made, much less denied.

As to his request that O'Neal and Dickson be compelled to appear, petitioner's argument focuses primarily on the judge's foregoing statements that she had no authority to issue subpoenas for out-of-state witnesses.  As petitioner correctly notes, the Louisiana Code of Criminal Procedure does in fact provide a mechanism to compel the attendance of an out-of-state witness if a defendant acts with due diligence to secure the witness and makes a proper showing that the testimony will be relevant and material.  La. Code Crim. P. art. 741;[24] State v. Hogan, 372 So.2d

---

[23]  State Rec., Vol. III of VI, transcript of August 1, 2008, pp. 3-5.

[24]  Specifically, Article 741 provides:

  If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions or grand jury investigations commenced or about to commence in this state, is a

1211, 1214 (La. 1979) ("A defendant is thus entitled to summon, at state expense, the attendance of

witnesses from outside the state, provided he makes a prior showing that the testimony is relevant

and material. ...  However, this right is predicated on the exercise by the accused of due diligence.");

State v. Barnes, 365 So.2d 1282, 1283 (La. 1978) ("A defendant is entitled to summon at State

expense the attendance of witnesses from outside the state, provided he makes a prior showing that

the testimony sought is relevant and material.  The statute itself requires that the defendant show that

the witness is material." (citations omitted)).  However, even if this Court could somehow overlook

---

material witness in a prosecution pending in a court of record in this state, or in a
grand jury investigation which has commenced or is about to commence, a judge of
such court may issue a certificate under the seal of the court stating these facts and
specifying the number of days the witness shall be required.  This certificate shall be
presented to a judge of a court of record in the county (parish) in which the witness
is found.

   If the certificate recommends that the witness be taken into immediate
custody and delivered to an officer of this state to assure his attendance in this state,
the judge may direct that the witness be forthwith brought before him.  The judge
being satisfied of the desirability of custody and delivery, for which determination
the certificate shall be prima facie proof, may order that the witness be forthwith
taken into custody and delivered to an officer of this state.  The order shall be
sufficient authority for the officer to take the witness into custody and hold him
unless and until he may be released by bail, recognizance, or order of the judge
issuing the certificate.

   If the witness is summoned to attend and testify in this state he shall be
tendered the sum of ten cents a mile for each mile and five dollars for each day that
he is required to travel and attend as a witness.  A witness who has appeared in
accordance with the provisions of the summons shall not be required to remain
within the state a longer period of time than the period mentioned in the certificate,
unless otherwise ordered by the court.  If the witness fails without good cause to
attend and testify as directed in the summons, he shall be punished in the manner
provided for the punishment of any witness who disobeys a summons issued from
a court of record of this state.

La. Code Crim. P. art. 741.

the fact that the defense failed to actually follow these procedures to secure the attendance of O'Neal and Dickson, petitioner still has not shown that the trial court's actions denied his federal constitutional right to compulsory process for the following reasons.

Regarding compulsory-process claims, the United States Fifth Circuit Court of Appeals has explained:

> The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. The Supreme Court has made clear, however, that in order to establish a violation of the compulsory process right, a petitioner must show more than the mere absence of a defense witness's testimony at trial. See United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Rather, a petitioner "must at least make some plausible showing of how [the absent witness's] testimony would have been both material and favorable to his defense." Valenzuela-Bernal, 458 U.S. at 867, 102 S.Ct. 3440 (holding that defendant's compulsory process right was not violated by the deportation of illegal aliens who could be defense witnesses because defendant could not show lost testimony would have been material, favorable, and not merely cumulative).

Janecka v. Cockrell, 301 F.3d 316, 326 (5th Cir. 2002). Here, petitioner obviously has not made the showing required to establish a constitutional violation. For example, with respect to Dickson, petitioner alleges that he was present during the incident and could have supported petitioner's version of the facts. With respect to O'Neal, petitioner alleged at trial that "[h]e came back to my house and saw my two sisters and my wife and said that he made a big mistake and was going to straighten this up."[25] In his federal application, petitioner also opines that O'Neal had valuable

---

[25] State Rec., Vol. III of VI, transcript of August 1, 2008, at pp. 3-4.

information because he was the first officer on the scene and conducted the initial investigation. However, these vague, self-serving, and unsupported allegations simply cannot be said to meet petitioner's burden of proof to show that Dickson and O'Neal in fact had relevant and material testimony to offer.  Without more, this Court has no basis for finding that the trial court violated petitioner's federal constitutional right to compulsory process by denying him an eleventh-hour continuance to secure the presence of these two witnesses.

Petitioner next argues that he was denied his right to confront his accusers.  The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.  "[T]his bedrock procedural guarantee applies to both federal and state prosecutions." Crawford v. Washington, 541 U.S. 36, 42 (2004).  Simply put, "the Confrontation Clause prohibits (1) testimonial out-of-court statements; (2) made by a person who does not appear at trial; (3) received against the accused; (4) to establish the truth of the matter asserted; (5) unless the declarant is unavailable and the defendant had a prior opportunity to cross examine him." United States v. Gonzales, 436 F.3d 560, 576 (5th Cir. 2006).  Here, there was no Confrontation Clause violation for the following reasons.

Petitioner's first contention with respect to this claim is that he was denied the opportunity to confront O'Neal at trial; however, no testimonial out-of-court statements made by O'Neal were admitted at trial.  "[T]he Confrontation Clause is not implicated when, as here, the prosecution did not use the witness's testimony at trial, in either live or recorded form.  There simply is no right to confront a 'witness' who provides no evidence at trial." Jackson v. Lafler, No. 07-14328, 2009 WL 3672104, at *7 (E.D. Mich. Nov. 3, 2009) (citations omitted).

Petitioner's second contention is that he should have been able to confront the victim's mother, Linda Sewell, because she memorialized the victim's police statement in writing when the victim was unable to write it himself due to his injuries.  However, again, neither that police statement nor any statement of Linda Sewell was admitted at trial.  Moreover, as to police statement, it was the victim, not his mother, who was the true declarant with respect to the assertions contained in therein.  The victim did appear at trial and was subject to cross-examination.  Where the declarant testifies at trial and is subject to cross-examination, the federal Confrontation Clause simply is not implicated.  United States v. Owens, 484 U.S. 554 (1988); California v. Green, 399 U.S. 149 (1970); Carson v. Collins, 993 F.2d 461, 464 (5th Cir. 1993).

Lastly, petitioner claims that his counsel was ineffective.  The United States Supreme Court established a two-pronged test for evaluating claims of ineffective assistance of counsel.  Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If the Court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.

See <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001).   "Counsel's performance is deficient if it falls below an objective standard of reasonableness."   <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998).   Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See <u>Strickland</u>, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   <u>Strickland</u>, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  <u>Id</u>.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  <u>Crockett</u>, 796 F.2d at 793.

As noted, in the post-conviction proceedings, the state district court denied the ineffective assistance of counsel claim on the basis that petitioner failed to meet his burden of

proof,[26] and relief was then likewise denied by the Louisiana First Circuit Court of Appeal[27] and the

Louisiana Supreme Court.[28]  Because such a claim presents a mixed question of law and fact, this

Court must defer to the state court decision denying relief unless that decision was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881

(5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA,

federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application
> of the Strickland standard was unreasonable.  This is different from
> asking whether defense counsel's performance fell below Strickland's
> standard.  Were that the inquiry, the analysis would be no different
> than if, for example, this Court were adjudicating a Strickland claim
> on direct review of a criminal conviction in a United States district
> court.  Under AEDPA, though, it is a necessary premise that the two
> questions are different.   For purposes of  §  2254(d)(1),  an
> *unreasonable* application of federal law is different from an *incorrect*
> application of federal law.  A state court must be granted a deference
> and latitude that are not in operation when the case involves review
> under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit
> precludes federal habeas relief so long as fairminded jurists could
> disagree on the correctness of the state court's decision.  Yarborough
> v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938
> (2004).  And as this Court has explained, "[E]valuating whether a
> rule application was unreasonable requires considering the rule's
> specificity.  The more general the rule, the more leeway courts have

---

[26] State Rec., Vol. IV of VI, Order dated May 7, 2012.

[27] State v. Batiste, No. 2012 KW 0906 (La. App. 1st Cir. Aug. 13, 2012); State v. Batiste, No.
2012 KW 1512 (La. App. 1st Cir. Oct. 29, 2012); State Rec., Vol. IV of VI.

[28] State *ex rel.* Batiste v. State, 114 So.3d 1155 (La. 2013) (No. 2012-KH-2525); State Rec., Vol.
IV of VI.

> in reaching outcomes in case-by-case determinations." <u>Ibid</u>.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S. Ct. 770, 785-86 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of <u>Strickland</u> was unreasonable is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added).

- 31 -

Applying these stringently deferential standards, the Court simply cannot find that petitioner met his burden of proof with respect to a claim that his counsel was ineffective for failing to secure the presence of petitioner's proposed witnesses.  As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.  This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, petitioner presented no evidence whatsoever, such as affidavits from the uncalled witnesses, demonstrating that they would in fact have testified in a manner beneficial to the defense.  Therefore, he clearly failed met his burden with respect to this claim.  See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from

the defendant"); <u>Buniff v. Cain</u>, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); <u>Anthony v. Cain</u>, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director, TDCJ-CID</u>, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Petitioner also argues that his counsel was ineffective for repeatedly seeking continuances in the case, which resulted in a delay of almost seven years between the arraignment and the trial. However, "[a] decision on whether to seek a continuance is a strategic choice generally accorded great deference." <u>Johnson v. Cain</u>, Civ. Action No. 08-4208, 2009 WL 2366385, at *8 (E.D. La. July 29, 2009); <u>accord</u> <u>Welch v. Ryan</u>, No. CV-09-1937, 2010 WL 1995393, at *8 (D. Ariz. Apr. 21, 2010), <u>adopted</u>, 2010 WL 1995377 (D. Ariz. May 18, 2010); <u>Brooks v. Cain</u>, Civ. Action No. 06-1869, 2009 WL 3088323, at *13 (E.D. La. Sept. 21, 2009). Here, the reasons for the numerous continuances are not apparent from the record; however, this Court cannot simply assume that they were improper or unnecessary, in that continuances often benefit the defense. <u>See, e.g.</u>, <u>United States v. Webb</u>, 796 F.2d 60, 63 (5th Cir. 1986) (rejecting as frivolous a claim that counsel

was ineffective for requesting a continuance "to gain time to complete necessary trial preparation");

Brownlee v. Knipp, No. CV 12-0859, 2012 WL 6773361, at *33 (C.D. Cal. Nov. 5, 2012), adopted,

2013 WL 74705 (C.D. Cal. Jan. 4, 2013).  For example, such delays might well be sought to gain

a tactical advantage, with the defense hoping that the prosecution witnesses will relocate, their

memories will fade, or that other evidence implicating the accused will grow stale or disappear.

Although petitioner opines that the delays in this case ultimately worked to his disadvantage because

O'Neal (the arresting officer) and Dickson (petitioner's friend) were unavailable at the time of trial,

he did not show that their testimony would in fact have benefitted the defense.  Without more,

petitioner obviously failed to meet his burden of proof with respect to this ineffective assistance

claim.

Petitioner next argues that his counsel was ineffective for failing to challenge the use

of a six-person jury for trial.  The Louisiana law provides:

> Cases in which punishment may be capital shall be tried by a
> jury of twelve jurors, all of whom must concur to render a verdict.
> Cases in which punishment is necessarily confinement at hard labor
> shall be tried by a jury composed of twelve jurors, ten of whom must
> concur to render a verdict. Cases in which the punishment may be
> confinement at hard labor shall be tried by a jury composed of six
> jurors, all of whom must concur to render a verdict.

La. Code Crim. P. art. 782(A); see also La. Const. art. I, § 17(A).  Here, petitioner was charged with

second degree battery and aggravated criminal damage to property.  Pursuant to La. Rev. Stat. Ann.

§§  14:34.1 and 14:55, the punishments for those two non-capital offenses did not mandate

imprisonment at hard labor, and, therefore, a six-person jury was appropriate.

Petitioner argues that he was nevertheless entitled to a twelve-person jury because he faced a life imprisonment at hard labor *as a habitual offender*.  However, as the Louisiana Supreme Court has explained:

> [T]he habitual offender proceeding is a separate proceeding applicable only after conviction and then at the discretion of the district attorney.  It forms no part of the punishment of the criminal case involving defendant's guilt or innocence; therefore, it has no bearing on the determination of the number of persons comprising the jury for the trial of the case.

State v. Sherer, 354 So.2d 1038, 1040 (La. 1978).

In light of the foregoing, the use of a six-person jury was proper; therefore, counsel obviously was not ineffective for failing to make a meritless objection to it.  See Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Lastly, petitioner argues that, even if his ineffective assistance of counsel claims fail when considered individually, the specified "errors" warrant relief when considered cumulatively.  This Court disagrees.  Where, as here, the individual contentions are meritless, that result cannot be changed simply by asserting them collectively.  See United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006) ("Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions."); Miller v. Johnson, 200 F.3d 274, 286

- 35 -

n.6 (5th Cir. 2000).  As the United States Fifth Circuit Court of Appeals has noted:  "Twenty times zero equals zero."  <u>Mullen v. Blackburn</u>, 808 F.2d 1143, 1147 (5th Cir. 1987).

For all of the foregoing reasons, petitioner's interrelated claims that he was denied his rights to subpoena witnesses, confrontation, and the effective assistance of counsel should be denied.

<b><u>RECOMMENDATION</u></b>

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Troy Batiste be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[29]

New Orleans, Louisiana, this twentieth day of October, 2014.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[29] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.