**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TROY BATISTE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-3856** |
| **BURL CAIN, WARDEN** | **SECTION "G"(1)** |

## ORDER AND REASONS

Before the Court are Petitioner Troy Batiste's ("Petitioner") objections[1] to the Report and Recommendation of the United States Magistrate Judge assigned to the case.[2] Petitioner, a state prisoner incarcerated in the Louisiana State Penitentiary, filed a complaint pursuant to 28 U.S.C. § 2254 challenging his sentence enhancement, contesting the sufficiency of the evidence supporting his underlying convictions, and seeking relief based on the alleged deprivation of his rights to subpoena witnesses, confront his accusers, and receive effective assistance of counsel.[3] The Magistrate Judge recommended that Petitioner's claims be dismissed with prejudice on the merits,[4] and Petitioner objects to the recommendation.[5] After reviewing the complaint, the Magistrate Judge's Report and Recommendation, the relevant pleadings, the state court record, and the applicable law, the Court will overrule Petitioner's objections, adopt the Magistrate Judge's Report and Recommendation, and dismiss Petitioner's habeas corpus petition with prejudice.

---

[1] Rec. Doc. 15.

[2] Rec. Doc. 14.

[3] Rec. Doc. 4.

[4] Rec. Doc. 14.

[5] Rec. Doc. 15.

# I. Background

## A.    *Factual Background*

On October 1, 2001, Petitioner was charged by bill of information with one count of second degree battery and one count of aggravated criminal damage to property.[6] On August 1, 2008, a jury in the Twenty-Second Judicial District Court for the Parish of St. Tammany found Petitioner guilty on both counts.[7] On November 3, 2008, the trial court sentenced Petitioner to imprisonment for a concurrent term of five years as to both counts.[8] On September 16, 2010, Petitioner was found to be a third-time offender and was resentenced to life imprisonment without the benefit of probation, parole, or suspension of sentence.[9] The Louisiana First Circuit Court of Appeal affirmed Petitioner's convictions, habitual offender adjudications, and sentences on June 10, 2011.[10] On January 13, 2012, the Louisiana Supreme Court denied Petitioner's related writ application, without written reasons.[11]

Petitioner filed an application for post-conviction relief with the state trial court on March 26, 2012.[12] On May 7, 2012, the state trial court denied Petitioner's application on the merits.[13] Petitioner sought supervisory writs before the Louisiana First Circuit, which were denied on

---

[6] State Rec., Vol. I of VI, Bill of Information.

[7] State Rec., Vol. I of VI, Jury Verdict Form.

[8] State Rec., Vol. I of VI, Minute Entry, November 3, 2008.

[9] State Rec., Vol. II of VI, Reasons for Judgment, September 24, 2010.

[10] *State v. Batiste*, No. 2010 KA 2237 (La. App. 1st Cir. 06/10/11). State Rec., Vol. IV of VI.

[11] *State v. Batiste*, No. 2011-KO-1527 (La. 2012); 77 So.3d 951. State Rec., Vol. IV of VI.

[12] State Rec., Vol. IV of VI, Uniform Application for Post-Conviction Relief, March 26, 2012.

[13] State Rec., Vol. IV of VI, Order, May 7, 2012.

August 13, 2012[14] and October 29, 2012.[15] On November 26, 2012, Petitioner filed a writ application with the Louisiana Supreme Court.[16] The Louisiana Supreme Court denied Petitioner's writ application on April 19, 2013.[17]

Petitioner filed this federal habeas petition on May 9, 2013.[18] Petitioner raises six claims for relief: (1) he was denied his rights to subpoena witnesses and to confrontation; (2) his sentence enhancement was unjust because it was instituted by bill of information rather than an indictment; (3) his sentence enhancement was unjust because it was decided by a jury instead of a judge; (4) his sentence enhancement was unjust because the jury on his underlying conviction was unaware that a guilty verdict would trigger a sentence of life imprisonment; (5) the evidence supporting his convictions was insufficient; and (6) he was denied effective assistance of counsel.[19] In response, the State argues that the state courts' determinations on each of Petitioner's claims were not contrary to, nor unreasonable applications of, federal law.[20] On August 28, 2013, Petitioner filed a "Rebuttal to the States Answer to Habeas Petition," arguing that each of his claims should succeed on the merits.[21]

---

[14] *State v. Batiste*, No. 2012 KW 0906 (La. App. 1st Cir. 08/13/12). State Rec., Vol. IV of VI.

[15] *State v. Batiste*, No. 2012 KW 1512 (La. App. 1st Cir. 10/29/12). State Rec., Vol. IV of VI.

[16] State Rec., Vol. IV of VI, Appendix C: Supreme Court of Louisiana Writ Application Filing Sheet, Nov. 26, 2012.

[17] *State ex rel. Batiste v. State*, No. 2012-KH-2525 (La. 2013); 114 So.3d 1155. State Rec., Vol. IV of VI.

[18] Rec. Doc. 4.

[19] Rec. Doc. 4-1 at 5.

[20] Rec. Doc. 12 at 16.

[21] Rec. Doc. 13.

**B.**     ***Report and Recommendation Findings***

The Magistrate Judge recommends that this Court dismiss Petitioner's claims with prejudice on the merits.[22] Because "there is no federal constitutional right to an indictment"[23] and "Louisiana law does not provide for a grand jury indictment [in] multiple offender adjudications,"[24] the Magistrate Judge rejected Petitioner's first claim that his habitual offender proceedings should have been initiated by an indictment.[25] As for Petitioner's second claim that the habitual offender charge should have been submitted to a jury for determination, the Magistrate Judge noted that "[t]he United States Supreme Court has held that the Constitution does not require that proof of the fact of a prior conviction be brought to a jury."[26] Moreover, "Louisiana law does not provide for a jury trial in connection with [a petitioner's] multiple offender adjudication."[27] Accordingly, the Magistrate found Petitioner's second claim without merit.[28] Finally, the Magistrate Judge determined that Petitioner's third claim—that the jury should have been informed that he faced a potential life sentence—was without merit because there is no federal law stating that a defendant is entitled to such a jury instruction.[29]

---

[22] Rec. Doc. 14.

[23] *Id.* at 10 (quoting *Hamilton v. McCotter*, 772 F.2d 171, 184 (5th Cir. 1985)).

[24] *Id.* at 11 (quoting *Schmolke v. Cain*, No. 10-1534, 2011 WL 2413476, at *9 (E.D. La. May 25, 2011), *adopted*, 2011 WL 2312481 (E.D. La. June 10, 2011)).

[25] *Id.*

[26] *Id.* at 11–12 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 590 (2000)).

[27] *Id.* at 12 (quoting *Schmolke*, 2011 WL 2413476, at *9).

[28] *Id.*

[29] *Id.* at 12–13.

The Magistrate Judge also rejected Petitioner's fourth claim challenging the sufficiency of the evidence presented at trial in support of his convictions.[30] The Magistrate determined that the elements of the offenses were established through the victim's testimony, as well as other evidence.[31] According to the Magistrate, the issues raised by Petitioner relate to credibility, which is beyond the scope of habeas review.[32] Accordingly, the Magistrate Judge determined that Petitioner could not show that the state trial court's decision regarding sufficiency of the evidence was irrational in light of the evidence presented.[33]

The Magistrate Judge also found Petitioner's claims that he was denied his rights to subpoena and confront witnesses without merit.[34] Specifically, Petitioner claimed that he asked his defense counsel to subpoena the following witnesses for trial: Deputy Michael O'Neal, Reginald Dickson, Sharon Laurant, Dr. Tassin, Felisha Jarvis, and Lester Casnea.[35] The Magistrate Judge first noted that Petitioner never asked the state trial court to secure the presence of Sharon Laurent, Dr. Tassin, and Lester Casnea, and so Petitioner had "no grounds to complain that the trial court erred in denying his request to issue subpoenas to [those witnesses] in that no request for such subpoenas was ever made, much less denied."[36] Regarding the request that Deputy Michael O'Neal and Reginald Dickson appear at trial, the Magistrate found that defense counsel failed to follow

---

[30] *Id.* at 17.

[31] *Id.* at 18.

[32] *Id.* at 19 (citing *Schlup v. Delo*, 513 U.S. 298, 330 (1995); *Ramirez v Dretke*, 398 F.3d 691, 695 (5th Cir. 2005)).

[33] *Id.*

[34] *Id.* at 26–28.

[35] *Id.* at 20.

[36] *Id.* at 24.

the proper procedures to secure the attendance of these out-of-state witnesses.[37]  Moreover, the Magistrate Judge concluded that Petitioner failed to show how the absent witnesses' testimony would have been relevant and material to Petitioner's defense.[38]

Turning to Petitioner's argument that he was denied the right to confront his accusers when he was denied the opportunity to confront O'Neil at trial, the Magistrate Judge found this argument without merit because no testimonial out-of-court statements made by O'Neil were admitted at trial.[39] As for Petitioner's argument that he should have been able to confront the victim's mother, Linda Sewell, because she memorialized the victim's police statement in writing when the victim was unable to write it himself due to his injuries, the Magistrate determined that this argument was unavailing because the police statement was not admitted at trial.[40] Moreover, the victim appeared at trial and was subject to cross-examination.[41]

Finally, the Magistrate addressed Petitioner's ineffective assistance of counsel claims.[42] The Magistrate Judge rejected Petitioner's claim that his counsel was ineffective for failing to secure the presence of the proposed witnesses, finding that Petitioner presented no evidence demonstrating that the witnesses would have testified in a manner beneficial to the defense.[43] As for Petitioner's argument that counsel was ineffective in seeking numerous trial continuances, the

---

[37] *Id.* at 25–26.

[38] *Id.* at 26–27 (citing *Janecka v. Cockrell*, 301 F.3d 316, 326 (5th Cir. 2002)).

[39] *Id.* at 27 (citing *Jackson v. Lafler*, No. 07-14328, 2009 WL 3672104, at *7 (E.D. Mich. Nov. 3, 2009)).

[40] *Id.* at 28.

[41] *Id.*

[42] *Id.* at 28–36.

[43] *Id.* at 32.

Magistrate found that Petitioner failed to demonstrate that such delays disadvantaged him.[44] Turning to Petitioner's argument that his counsel was ineffective in failing to challenge the use of a six-person jury, the Magistrate determined that the use of a six-person jury was proper and counsel was not ineffective in failing to make a meritless objection to it.[45] Finally, the Magistrate Judge found Petitioner's argument that the cumulative effect of his counsel's alleged errors was sufficient to establish deficient performance unavailing because "[w]here, as here, the individual contentions are meritless, that result cannot be changed simply by asserting them collectively."[46] Accordingly, the Magistrate Judge recommended that Petitioner's federal habeas corpus petition be dismissed.[47]

## II. Objections

### A.      *Petitioner's Objection*

Petitioner filed timely objections to the Magistrate Judge's Report and Recommendation.[48] Petitioner contends that the Report and Recommendation is "erroneous" because it: (1) "overlooks the 'contrary to' clause, where [Petitioner] clearly relied [on] and cited U.S. Supreme Court decision[s] in support of relief;" (2) "erred [by] giving differential [sic] treatment to the state trial court's May 8, 2012, summary denied [sic] of relief without requiring the state to answer the claims or ordering [an] evidentiary hearing;" and (3) "failed to review [his] claim under firmly held United

---

[44] *Id.* at 33–34.

[45] *Id.* at 34–35.

[46] *Id.* at 35 (citing *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006).

[47] *Id.* at 36.

[48] Rec. Doc. 15.

States Supreme Court precedent as set forth in the Memorandum in Support of his § 2254 application."[49]

First, Petitioner objects to the Magistrate's determination that his right to compulsory process and to confront his accusers were not violated.[50] Petitioner argues in his opposition that the absence at trial of Deputy Michael O'Neal, the arresting officer, and Linda Sewell, the victim's mother, violated his constitutional rights to subpoena and confront witnesses.[51] Petitioner contends the presence of Deputy O'Neal at trial was "crucial" because he was the arresting officer "who brought felony charges against petitioner."[52] Additionally, because Linda Sewell wrote her son's police statement, Petitioner claims he had the right to confront her regarding the truthfulness of the victim's statement.[53] Petitioner further claims that "where the prosecution has access to a witness, the prosecution should secure that witness' attendance, regardless of cost."[54] Petitioner ultimately submits that his Sixth and Fourteenth Amendment rights were violated because "critical defense witnesses were not subpoenaed by the court."[55]

Second, Petitioner objects to the Magistrate's finding that the Confrontation Clause was not violated, claiming that "his right to confrontation was abridged when he was not afforded [the] opportunity to test the truthfulness or accuracy of the state's key witness when Deputy Michael

---

[49] *Id.* at 1–2.

[50] *Id.* at 2.

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.* at 4.

[55] *Id.*

O'Neal was not present for trial."[56] Petitioner further objects to Linda Sewell's absence since "she was not tested under oath as to the truthfulness of the alleged victim's statement."[57]

Third, Petitioner objects to the Magistrate's determination that it was not error for the multiple-offender charge to be brought by a bill of information rather than an indictment.[58] Petitioner asserts his federal and state constitutional rights were violated because he was charged as a multiple offender by a bill of information instead of an indictment.[59] In support of this argument, Petitioner contends that "[t]he state knew from the outset that if petitioner was found guilty, they intended to multi-bill him and give him a sentence of life imprisonment."[60] Petitioner submits that although "Louisiana [c]ourts usually hold that habitual offender proceedings are not a charge but rather a sentence enhancement proceeding," because of the State's intent to charge him as a multiple offender, he should have been given "special constitutional protections."[61]

Fourth, Petitioner argues that the imposition of a life sentence based on his multiple offender charge was unconstitutional because the sentence enhancement should have been decided by the jury rather than the judge.[62] Petitioner argues that Louisiana Revised Statutes 15:529.1— which provides that the judge, rather than the jury, has the authority to hear multiple offender

---

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.* at 5.

[60] *Id.* (internal citation omitted).

[61] *Id.*

[62] *Id.* at 6–8 (citing *Blakely v. Washington*, 542 U.S. 296 (2004)).

proceedings—is unconstitutional as applied in his case because "the state, prior to trial, was well aware of their intent to multi bill him."[63]

Fifth, Petitioner objects to the Magistrate's finding that the evidence was sufficient to support his conviction.[64] Petitioner contends that the State failed to prove beyond a reasonable doubt that the assault was not in self-defense.[65] Petitioner also asserts that the evidence was insufficient as to his intent to cause serious bodily injury and the actual severity of the injuries allegedly suffered by the victim.[66] On his conviction for aggravated criminal damage to property, Petitioner asserts that the State failed to show he had intent to cause damage and that it was foreseeable a human life could be endangered on account of the damage.[67]

Sixth, Petitioner objects to the Magistrate Judge's finding that Petitioner's counsel was not ineffective.[68] Petitioner contends that his counsel was ineffective by failing to obtain the presence of specific witnesses at trial.[69] Petitioner notes that he "diligently informed his Counsel . . . on several occasions, to subpoena Deputy Michael O'Neal and other defense witnesses for trial."[70] However, these witnesses were not made available at trial.[71] Petitioner argues "that if the court finds that appointed counsel failed to request subpoena's [sic] for these witnesses, he was denied

---

[63] *Id.* at 8.

[64] *Id.* at 8–9.

[65] *Id.* at 9.

[66] *Id.* at 10–11.

[67] *Id.* at 12.

[68] *Id.* at 15.

[69] *Id.*

[70] *Id.*

[71] *Id.*

the effective assistance of counsel."[72] Finally, Petitioner objects to the Magistrate's finding that Petitioner's counsel was not ineffective in requesting numerous continuances.[73] Petitioner argues his counsel's performance was ineffective because "[c]ounsel requested no less than forty-five . . . continuances over seven years" and "it is difficult to comprehend any scenarios where it would be good trial strategy or in the client's best interest to reset a criminal case for almost seven years."[74] Petitioner asserts that he waived his Fifth Amendment rights against self-incrimination and testified at trial because he had no witnesses to support his defense.[75]

**B.      State's Opposition**

The State of Louisiana did not file a brief in opposition to Petitioner's objections despite receiving electronic notice of the filing.

### III. Standard of Review

**A.      Standard of Review of a Magistrate Judge's Report and Recommendation**

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. A District Judge "may accept, reject, or modify the recommended disposition" of a Magistrate Judge on a dispositive matter.[76] The District Judge must "determine de novo any part of the [Report and Recommendation] that has been properly objected

---

[72] *Id.* at n.6.

[73] *Id.* at 18.

[74] *Id.*

[75] *Id.*

[76] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

to."[77] A District Court's review is limited to plain error for parts of the report which are not properly objected to.[78]

## B.     Standard of Merits Review under AEDPA

Following the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the standard of review used to evaluate issues presented in habeas corpus petitions was revised "to ensure that state-court convictions are given effect to the extent possible under law."[79] For questions of fact, federal courts must defer to a state court's findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[80] A state court's determinations on mixed questions of law and fact or pure issues of law, on the other hand, are to be upheld unless they are "contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[81]

Regarding this standard, the U.S. Court of Appeals for the Fifth Circuit further explains:

A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state-court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.[82]

---

[77] Fed. R. Civ. P. 72(b)(3).

[78] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

[79] *Bell v. Cone*, 535 U.S. 685, 693 (2002).

[80] 28 U.S.C. § 2254(d)(2).

[81] 28 U.S.C. § 2254(d)(1).

[82] *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010) (internal citations and quotation marks omitted).

If Supreme Court case law "give[s] no clear answer to the question presented, let alone one in [the petitioner's] favor, 'it cannot be said that the state court unreasonably applied clearly established Federal law.'"[83] Additionally, "unreasonable is not the same as erroneous or incorrect; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."[84]

### IV. Law and Analysis

#### A.     *Right to Compulsory Process*

In his habeas corpus petition, Petitioner contends that his right to compulsory process was violated by the absence at trial of Deputy Michael O'Neal, Reginald Dickson, Sharon Laurent, Dr. Tassin, and Lester Casnea.[85] The Magistrate Judge found no merit in this claim, concluding that Petitioner "raised this issue at trial only with respect to Deputy Michael O'Neal and Reginald Dickson" and further failed to show either of these two witnesses had "relevant and material testimony to offer" in his defense.[86] Petitioner objects to the Magistrate Judge's determination.[87] Accordingly, the Court reviews this claim de novo.

The Sixth Amendment protects an accused's right "to have compulsory process for obtaining witnesses in his favor."[88] However, as noted by the Fifth Circuit, "[this] right is not

---

[83] *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quoting *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

[84] *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) (internal quotation marks omitted).

[85] Rec. Doc. 4-1 at 16–18. Petitioner also contends the state trial court erred by asserting that it had "no subpoena power" over out-of-state witnesses Deputy Michael O'Neal and Reginald Dickson. *Id.* at 14. The Magistrate Judge noted Petitioner's argument on this point is correct, but concluded that in order to prove a constitutional violation on this issue, Petitioner still has to show the witnesses' testimony would have been material and favorable to his defense. Rec. Doc. 14 at 24–27.

[86] *Id.* at 24, 27.

[87] Rec. Doc. 15 at 2.

[88] U.S. Const. amend VI.

absolute."[89] "When requesting a court to subpoena a witness, a defendant has the duty to demonstrate the necessity of the witness's testimony."[90] Thus, a petitioner alleging a violation of his or her right to compulsory process "must at least make some plausible showing of how [the absent witness's] testimony would have been both material and favorable to his defense."[91]

As noted by the Magistrate Judge, Petitioner did not object to the absence of Sharon Laurent, Dr. Tassin, and Lester Casnea at trial. There is also no indication in the record that Petitioner ever attempted to issue subpoenas to compel the presence of these witnesses. Moreover, Petitioner has made no plausible showing of how these witnesses' testimony would have been both material and favorable to his defense.

Petitioner alleges that Reginald Dickson witnessed the events leading up to his arrest and could have supported Petitioner's version of the facts. Petitioner claims Deputy O'Neal "visited [P]etitioner's family members and indicated to them that he made a mistake in arresting [P]etitioner and that he was going to 'straighten this thing out.'"[92] These self-serving, unsupported allegations are insufficient to meet Petitioner's burden of showing that the testimony would have been relevant and material to his defense.[93] Accordingly, on de novo review, the Court finds that the state court's denial of relief on this claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.

---

[89] *United States v. Redd*, 355 F.3d 866, 879 (5th Cir. 2003).

[90] *Id.* (quoting *United States v. Gonzales*, 79 F.3d 413, 424 (5th Cir. 1996)).

[91] *Id.* (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982)).

[92] Rec. Doc. 4-1 at 16.

[93] *See, e.g., Redd*, 355 F.3d at 879 (holding a petitioner's "speculation" about a proposed witness's anticipated testimony was insufficient and did not constitute "a plausible showing of how [the witness's] testimony would be both material and favorable to [the] defense").

### B.      *Right to Confrontation*

Petitioner claims that the absence at trial of Deputy Michael O'Neal and Linda Sewell violated his right to confront his accusers.[94] The Magistrate Judge rejected this argument, concluding that "no testimonial out-of-court statements made by O'Neal [or Sewell] were admitted at trial."[95] Petitioner objects to this finding, claiming that "his right to confrontation was abridged when he was not afforded [the] opportunity to test the truthfulness or accuracy of the state's key witness when Deputy Michael O'Neal was not present for trial."[96] Petitioner further objects to Linda Sewell's absence since "she was not tested under oath as to the truthfulness of the alleged victim's statement."[97] Accordingly, the Court reviews this claim de novo.

"The Sixth Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment, provides that 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[98] "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination."[99] The United States Fifth Circuit Court of Appeals has explained that "the Confrontation Clause prohibits (1) testimonial out-of-court statements; (2) made by a person who does not appear at trial; (3) received against the

---

[94] Rec. Doc. 4-1 at 19–20.

[95] Rec. Doc. 14 at 27.

[96] Rec. Doc. 15 at 4.

[97] *Id.* at 2.

[98] *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (internal citations omitted).

[99] *Id.* (quoting *Crawford v. Washington*, 541 U.S. 36, 54 (2004)).

accused; (4) to establish the truth of the matter asserted; (5) unless the declarant is unavailable and the defendant had a prior opportunity to cross examine him."[100]

A review of the trial court record reveals that no testimonial out-of-court statements made by either Deputy Michael O'Neal or Linda Sewell were admitted at trial. Moreover, the police statement Petitioner claims Linda Sewell wrote on behalf of the victim was not admitted at trial.[101] Therefore, the Confrontation Clause of the Sixth Amendment is not triggered.[102] Accordingly, on de novo review, the Court finds that the state court's denial of relief on this issue was not contrary to, nor did it involve an unreasonable application of, federal law.

**C.    *Multiple Offender Proceeding Instituted by Bill of Information***

In his habeas corpus petition, Petitioner contends his multiple offender proceeding was improperly instituted by bill of information rather than an indictment.[103] The Magistrate Judge found that this claim lacked merit because "neither federal nor [Louisiana] law requires an indictment to institute habitual offender proceedings."[104] Petitioner objects to the Magistrate Judge's conclusion, arguing that because the prosecution "knew from the outset that . . . they intended to multi-bill him," his proceedings required "special constitutional protections," such as an indictment.[105]

---

[100] *United States v. Jackson*, 636 F.3d 687, 695 (5th Cir. 2011) (internal citations omitted).

[101] State Rec., Vol. I of VI at 120, List of Evidence of Filed on July 30, 2008.

[102] *See Shuler v. Wainwright*, 491 F.2d 1213, 1224 (5th Cir. 1974) ("The Confrontation Clause of the Sixth Amendment applies to evidence actually disclosed at trial and a defendant has no right to confront a 'witness' who provides no evidence at the trial.").

[103] Rec. Doc. 4-1 at 5.

[104] Rec. Doc. 14 at 10.

[105] Rec. Doc. 15 at 5–8.

"The right to indictment by a grand jury finds its constitutional basis in the Fifth Amendment," which provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on . . . indictment of a Grand Jury."[106] However, "neither the Grand Jury Clause of the Fifth Amendment nor the Due Process Clause of the Fourteenth Amendment requires the state to afford the accused the right to grand jury review before trial."[107] Moreover, the Fifth Amendment does not require grand jury indictment to institute habitual offender proceedings.[108]

Under Louisiana law criminal "prosecutions" punishable by death or life imprisonment must be instituted by indictment.[109] Louisiana courts have held that a multiple offender proceeding is not a "prosecution" as it "does not charge a crime but is merely the method of informing the sentencing court of the circumstances and requesting an enhancement of penalty."[110] Therefore, neither federal nor state law required an indictment to institute the multiple offender proceeding. Accordingly, on de novo review, the Court finds that the state court's determination on this matter was not contrary to, nor did it involve an unreasonable application of, federal law.

**D.    *Multiple Offender Adjudication Decided by Judge***

Petitioner argues that his multiple offender adjudication should have been decided by the jury instead of a judge.[111] Petitioner also contends that the jury should have been informed that he

---

[106] *Wilkerson v. Whitley*, 28 F.3d 498, 502 (5th Cir. 1994) (quoting U.S. Const. amend V).

[107] *Id.* (citing *Hurtado v. California*, 110 U.S. 515 (1984)).

[108] *Buckley v, Butler*, 825 F.2d 895, 903 (1987). *See also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

[109] La. Code Crim. P art. 382.

[110] *State v. Vincent*, 2010-0764 (La. App. 4 Cir. 1/19/11), 56 So.3d 408, 414–15 (citing *State v. Alexander*, 325 So.2d 777, 779 (La. 1976)).

[111] Rec. Doc. 4-1 at 5.

faced a life sentence as a habitual offender.[112] The Magistrate Judge found that these arguments lacked merit because federal law does not require a jury trial for multiple offender adjudications nor does it require that the jury be instructed that a defendant is subject to an enhanced penalty as a habitual offender.[113] Petitioner objects to this finding, arguing that Louisiana Revised Statutes 15:529.1—which provides that the judge, rather than the jury, has the authority to hear multiple offender proceedings—is unconstitutional as applied in his case because "the state, prior to trial, was well aware of their intent to multi bill him."[114]

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to . . . an impartial jury."[115] However, as the United States Fifth Circuit has held, the right to a jury trial does not extend to habitual offender proceedings.[116] Moreover, the Court is unaware of any federal law requiring that the jury be instructed that a defendant is subject to an enhanced penalty. Accordingly, on de novo review, the Court finds that the state court's denial of relief on this issue was not contrary to, nor did it involve an unreasonable application of, federal law.

### E.    *Sufficiency of the Evidence*

Petitioner objects to the Magistrate's finding that the evidence was sufficient to support his conviction, arguing that "the Courts below erred in failing to examine whether the circumstantial evidence in the case excluded every reasonable hypothesis of innocence."[117] Petitioner contends

---

[112] *Id.*

[113] Rec. Doc. 14 at 12 (citing *Schmolke*, 2011 WL 2413476, at *9).

[114] Rec. Doc. 15 at 8.

[115] U.S. Const. amend VI.

[116] *Buckley*, 825 F.2d at 903.

[117] Rec. Doc. 15 at 9.

that the State failed to prove beyond a reasonable doubt that the battery was not in self-defense.[118] Petitioner also asserts that the evidence was insufficient as to his intent to cause serious bodily injury and the actual severity of the injuries allegedly suffered by the victim.[119] On his conviction for aggravated criminal damage to property, Petitioner asserts that the State failed to show he had intent to cause damage and that it was foreseeable a human life could be endangered on account of the damage.[120]

In *Jackson v. Virginia*, the Supreme Court held that an "applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."[121] As the Supreme Court explained:

> [T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[122]

It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[123] Thus, "[t]he jury's finding of facts will be overturned only when necessary to preserve the fundamental protection of due process of law."[124]

---

[118] *Id.* at 9.

[119] *Id.* at 10–11.

[120] *Id.* at 12.

[121] *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

[122] *Id.* at 319 (emphasis in original) (internal quotation marks and citations omitted).

[123] *Id.*

[124] *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008) (internal quotation marks and citations omitted).

Petitioner was convicted of second degree battery and aggravated criminal damage to property. Louisiana law defines battery as the intentional use of force or violence upon the person of another.[125] Second degree battery is a battery committed without the consent of the victim "when the offender intentionally inflicts serious bodily injury."[126] Serious bodily injury means bodily injury that "involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death."[127]   Therefore, the prosecution must prove each of the following elements beyond a reasonable doubt to obtain a conviction for second degree battery: (1) that the defendant specifically intended (2) to inflict serious bodily injury to the victim.[128] Specific intent is defined as the "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."[129]  Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances.[130]

Louisiana law defines aggravated criminal damage to property as "the intentional damaging of any . . . movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion." "A conviction for aggravated criminal damage to property

---

[125] La. Rev. Stat. 14:33.

[126] La. Rev. Stat. 14:34.1.

[127] *Id.*

[128] *State v. Johnson*, 15-0697 (La. App. 4 Cir. 2/3/16), 187 So.3d 35, 38.

[129] La. Rev. Stat. 14:10(1).

[130] *State v. Bishop*, 01-2548, p. 4 (La. 1/14/03), 835 So.2d 434, 437; *State v. Druilhet*, 97-1717 (La. App. 1 Cir. 6/29/98), 716 So.2d 422, 423.

does not require a showing of specific intent; rather, the State must only show general intent, that is, that the defendant 'voluntarily did the act.'"[131]

Petitioner argues that the state courts erred in failing to examine whether the circumstantial evidence in the case excluded every reasonable hypothesis of innocence. However, on habeas review, the Fifth Circuit has recognized that courts should not apply Louisiana's circumstantial evidence standard that requires the evidence to be inconsistent with every reasonable hypothesis of innocence because "only *Jackson* need be satisfied, even if state law would impose a more demanding standard of proof."[132]

At trial, the elements of the crimes were established through the victim's testimony and supporting evidence. As the Fifth Circuit has recognized, a victim's testimony and positive identification of a defendant are alone sufficient evidence to support a conviction.[133] Moreover, the crux of Petitioner's argument regarding his insufficiency of the evidence claim hinges on issues of credibility. He contends that the victim's characterization of the events was "implausible" and that "there was no definitive proof offered at trial that petitioner was the aggressor in this altercation other than [the victim's] discredited testimony and that was self-serving."[134] However, as the Supreme Court has recognized "the assessment of the credibility of witnesses is generally beyond the scope of [habeas] review."[135] On habeas review, the Court "must defer to the fact-

---

[131] *State v. Bradstreet*, 16-80, p. 7 (La. App. 5 Cir. 6/30/16), 2016 WL 3551664 (citing *State v. Brumfield*, 329 So.2d 181, 190 (La.1976)).

[132] *Foxy v. Donnelly*, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992) (quoting *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir.), *cert. denied*, 498 U.S. 903 (1990)). *See also Knox v. Butler*, 884 F.2d 849, 856 (5th Cir.1989) ("We are not persuaded that Louisiana [circumstantial evidence] law truly imposes a higher standard of proof" (footnote omitted)),

[133] *Peter v. Whitley*, 942 F.2d 937, 941–42 (5th Cir. 1991).

[134] Rec. Doc. 15 at 9–12.

[135] *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

finder to evaluate the credibility of witnesses."[136] When the evidence in this case is viewed in the light most favorable to the prosecution, it cannot be said that the guilty verdict was irrational.[137] Accordingly, on de novo review, the Court finds that the state court's denial of relief on this claim was not contrary to, nor did it involve an unreasonable application of, federal law.

## F.    *Ineffective Assistance of Counsel*

Petitioner also claims in his habeas corpus petition that he was denied his Sixth Amendment right to effective assistance of counsel.[138] Specifically, Petitioner contends that his counsel erred by failing to obtain the presence of several witnesses at trial, delaying the trial by requesting multiple continuances, and by failing to object to the use of a six-person jury.[139] Petitioner further argues that even if none of these alleged errors constitute deficient performance individually, their cumulative effect "amounted to a sham and a mockery of justice."[140] The Magistrate Judge rejected Petitioner's ineffective assistance of counsel claims, finding that Petitioner failed to carry his burden of demonstrating deficient performance.[141] Petitioner objects, arguing that the absence at trial of several witnesses and the number of continuances requested by his defense attorney are sufficient to meet the deficient performance and prejudice prongs of an ineffective assistance of counsel claim.[142]

---

[136] *Knox v. Butler,* 884 F.2d 849, 851–52 (5th Cir. 1989).

[137] *Jackson*, 443 U.S. at 319.

[138] Rec. Doc. 4-1 at 5.

[139] Rec. Doc. 4-1 at 29–35.

[140] Rec. Doc. 4-1 at 35.

[141] Rec. Doc. 14 at 32–36.

[142] Rec. Doc. 15 at 13–20.

To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.[143] If a court finds that a petitioner fails on either of these two prongs it may dispose of the ineffective assistance claim without addressing the other prong.[144]

To satisfy the deficient performance prong, a petitioner must overcome a strong presumption that the counsel's conduct falls within a wide range of reasonable representation.[145] Petitioner must show that the conduct was so egregious that it failed to meet the constitutional minimum guaranteed by the Sixth Amendment.[146] Courts addressing this prong of the test for ineffective counsel must consider the reasonableness of counsel's actions in light of all the circumstances.[147]

To prevail on the actual prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[148] A reasonable probability is "a probability sufficient to undermine confidence in the outcome."[149] As courts determine whether this prong is satisfied, they must consider "the relative role that the alleged trial errors played in the total context of [the] trial."[150]

---

[143] *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

[144] *Id.* at 697.

[145] *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

[146] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).

[147] *See Strickland*, 466 U.S. at 689.

[148] *Id.* at 694.

[149] *Id.*

[150] *Crockett*, 796 F.2d at 793.

Petitioner first argues that his counsel was ineffective for failing to call several witnesses at trial. As the Fifth Circuit has recognized, "[c]laims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain."[151] To prevail on such a claim, a petitioner must show prejudice "by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense."[152] Petitioner has failed to present any evidence that the uncalled witnesses would have testified and that their testimony would have been beneficial to the defense. Petitioner's bare assertions regarding these witnesses' purported testimony are insufficient to support his ineffective assistance of counsel claim.[153]

Petitioner further argues that his counsel's multiple requests for continuances constituted ineffective assistance. "[A] decision on whether or not to seek a continuance is inherently one of trial strategy and, as such, is generally accorded great deference."[154] Although Petitioner claims there is "no valid argument" to support his counsel's multiple requests for continuances, he has failed to meet his burden of showing that such performance was deficient or that it prejudiced his defense.

---

[151] *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010).

[152] *Id.* (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

[153] *Compare United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) ("[Petitioner]'s own speculations as to what [the absent witness] might have been able to contribute through his testimony are insufficient to establish a prima facie showing that [the absent witness]'s testimony would have substantially altered the outcome of the trial.") *with Adams v. Quarterman*, 324 F. App'x 340, 350 (5th Cir. 2009) ("When a petitioner comes forward with affidavits from those non-testifying witnesses attesting under oath as to (1) what they would have said at trial and (2) that in fact they would have testified at trial if they had been asked, we are chary to reject the uncalled witnesses' statements.").

[154] *Brooks v. Cain*, No. 06-1869, 2009 WL 3088323, at *3 (E.D. La. Sept. 21, 2009) (*McVean v. United States*, 88 Fed. App'x 847, 849 (6th Cir. 2004); *Moore v. Casperson*, 345 F.3d 474, 490 (7th Cir.2003)).

Petitioner contends that his counsel's performance was ineffective for failing to object to the use of a six-person jury at trial.[155] Louisiana Code of Criminal Procedure article 782(A) provides that "[c]ases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors." Petitioner argues that he was nevertheless entitled to a twelve-person jury because he faced a life sentence as a habitual offender. However, as the Louisiana Supreme Court has explained:

> [T]he habitual offender proceeding is a separate proceeding applicable only after conviction and then at the discretion of the district attorney. It forms no part of the punishment of the criminal case involving defendant's guilt or innocence; therefore, it has no bearing on the determination of the number of persons comprising the jury for the trial of the case.[156]

Counsel's performance cannot be deficient for failing to object to the use of a six-person jury because that action was proper under well-established Louisiana law.

Finally, Petitioner claimed that his counsel's alleged errors should constitute deficient performance when considered cumulatively. However, the Fifth Circuit has recognized that "ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions."[157] Therefore, this claim is without merit. Accordingly, on de novo review, the Court finds that the state court's denial of relief on Petitioner's ineffective assistance of counsel claims was not contrary to, nor did it involve an unreasonable application of, federal law.

---

[155] Rec. Doc. 4-1 at 34.

[156] *State v. Sherer*, 354 So.2d 1038, 1040 (La. 1978).

[157] *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006).

## V. Conclusion

For the foregoing reasons, the Court dismisses Petitioner's habeas corpus petition with prejudice.  Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's objections are **OVERRULED**;

**IT IS FURTHER ORDERED** that the Court **ADOPTS** the Report and Recommendation issued by the Magistrate Judge and **DISMISSES** Petitioner's claims **WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA,** this 26th day of September, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**